Hanway *v.* Wallace.

---

### HANWAY *v.* WALLACE.

When personal property is sold upon a condition precedent, and the vendee is to have possession until the performance of the condition, the vendee acquires no such vested interest in the property as can be seized and sold on execution.

And, as against a sheriff, attempting to seize and sell such property, the vendor has the right of possession, although not as against the vendee.

APPEAL from the *Marion* Common Pleas.

DAVISON, J.—*Hanway*, on the 14th of *January*, 1859, sued *Wallace* in the *Marion* Common Pleas, alleging, in his complaint, that he was and is the owner of a certain sorrel horse, now in the possession of the defendant, and unlawfully detained by him from the plaintiff. In his answer, the defend-

ant denies that the plaintiff is the owner of the horse, and avers that said horse was the property of *Abram Swisher*, and, as his property, was, on the 4th of *January*, 1859, attached at the suit of *Dandridge Oliver*, and taken into possession of the defendant, then the sheriff of *Marion* county. Reply in denial of the answer; verdict for the defendant. New trial refused, and judgment, &c.

The evidence proves, substantially, these facts: On the 1st of *September*, 1858, *Abram Swisher* and *Andrew Smithson* came to the plaintiff's store, at *Indianapolis; Smithson* brought with him a sorrel horse, (being the same now in controversy,) which *Swisher* desired to purchase. While at the store, *Smithson* drew a note, payable to himself at six months, for 75 dollars; *Swisher* signed the note and requested the plaintiff to sign it as his surety. Plaintiff refused to become surety for *Swisher*, but stated that he himself would buy the horse at 75 dollars. He then signed the note and, thereupon, *Smithson* delivered the horse to the plaintiff, who led him around the store house and hitched him to a horse rack. Plaintiff then said to *Swisher:* "You can take the horse and use him, and if you pay the note when it becomes due, the horse shall be yours, but if not the horse is mine." *Swisher* afterwards took the horse away and had possession of him until he was siezed by the defendant, as sheriff, upon the writ of attachment. When the note was executed, and also at the time the horse was levied on, *Swisher* was insolvent. The note referred to was in evidence, and is as follows:

"$75.00.          *Indianapolis, September* 1, 1858.

"Six months after date we, or either of us, promise to pay *Andrew Smithson*, or order, 75 dollars, with interest, value received, without any relief whatever from valuation and appraisement laws.          ABRAM SWISHER.
"JAMES HANWAY."

*Swisher* failed to pay the note; but the same was, after it matured, in *March*, 1859, paid and taken up by the plaintiff. It was admitted on the trial that the plaintiff, prior to the commencement of this suit, demanded the horse of the defendant.

From the facts thus stated it may be readily inferred that the plaintiff, by the purchase from *Smithson*, became the absolute owner of the horse; that he sold him to *Swisher*, to be his absolutely in case he paid the above recited note when it became due, and that, until the note matured, *Swisher* was to have the possession and use of the horse. The note did not mature until the 1st of *March*, 1859, and this action was commenced on the 14th of *January* next prior to that date. The general rule is that, to maintain an action for the recovery of personal chattels, the plaintiff must show "a right of possession as well as a right of property." But here the contract and delivery, as we construe them, constituted a conditional sale, the condition to be performed within a definite period. During that period the property in the horse remained in the plaintiff, though the vendee had a right to the possession. It follows that, as against the vendee, the plaintiff had no right of possession. Had he such right against the defendant, who, as sheriff, claims to hold the horse by virtue of an execution against his, the plaintiff's, vendee? This inquiry must receive an affirmative answer. The sale, by *Swisher*, was to become absolute upon the performance of a condition precedent, which had not been performed, and he had no right of property, but a mere right of possession, and, consequently, no vested interest in the horse. *Hussey* v. *Thornton*, 4 Mass. 405; *Marston* v. *Baldwin*, 17 *id.* 606; *Smith* v. *Dennie*, 6 Pick. 262; *Reed* v. *Upton*, 10 Pick. 522; *Hill* v. *Freeman*, 3 Met. 257; *Heath* v. *Randall*, 4 *id.* 195. The defendant, then, having no right to hold the property for the purpose of sale on execution, is, in our judgment, liable to

the plaintiff who had the right of property, and, against him, the right of possession. And this suit being against the sheriff, and not against the vendee of the horse, the fact that it was instituted prior to the maturity of the note, on the payment of which the property was to vest in the vendee, is not important, because, as we have seen, the plaintiff, as against the sheriff, had the right of possession as well as the right of property.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded.

*Thomas D. Walpole* and *R. L. Walpole*, for the appellant.