INHABITANTS OF HYDE PARK *vs.* INHABITANTS OF CANTON.

Norfolk.   Jan. 21, 1879. — March 1, 1881.   SOULE & FIELD, JJ., absent.

In an action by one town against another for the support of a female pauper, the agreed facts on which the case was submitted stated that the pauper contracted a valid marriage with a person in a town in another State, where they both resided, and they lived there as husband and wife for three years, when he left his home and family, and had not been heard from by her since; that, in the next month after he left her, she removed to the defendant town, where, five years and eight months afterwards, she married a person who had a legal settlement therein, and they lived together as husband and wife in the plaintiff town, where he soon after deserted her and removed out of the Commonwealth. *Held*, that the agreed facts did not warrant a finding that the pauper's first husband was dead when she contracted her second marriage.

CONTRACT for expenses incurred in the support of Ellen Coughlin, a pauper. The case was submitted to the Superior Court, and, after judgment for the plaintiff, to this court, on appeal, upon an agreed statement of facts, in substance as follows:

Ellen Coughlin, whose maiden name was Ellen Roach, contracted a valid marriage with William Lovell of West Rutland, in the State of Vermont, of which place she was also a resident, at said West Rutland, on June 9, 1867, and they lived together as husband and wife at West Rutland until June 1870, when he left his home and family, and has not been heard from by Ellen since. In July 1870, Ellen removed to Canton, in this Commonwealth, where she had a child by her said husband, born on February 13, 1871, having previously had two children by him, who are now living with her.

There has never been any divorce or separation by process of law between William and Ellen; and there is no evidence of his death, except such as may be inferred from the facts above stated.

On March 19, 1876, Ellen married Jeremiah Coughlin, who then had and now has a legal settlement in Canton, and they lived together as husband and wife in Hyde Park, where they had a child born ; but whether this marriage was valid or not is to be determined by the court. Coughlin soon after deserted Ellen at Hyde Park, and removed out of this Commonwealth.

Ellen was in need of relief as a pauper, and proper relief was furnished her by the plaintiff town, while she was residing in that town, of which the defendant town had legal notice, but denied its liability.

Lovell never had any legal or other settlement in Canton, or in this Commonwealth, and Ellen never had any settlement in Canton except such, if any, as she acquired by her marriage with Coughlin.

If the settlement of Ellen was to follow that of Jeremiah Coughlin, under the facts above set forth, judgment was to be entered for the plaintiff for the amount claimed in its declaration, and interest from the date of the writ; otherwise, judgment for the defendant.

*J. E. Cotter*, for the plaintiff.

*T. E. Grover*, for the defendant.

LORD, J. The question in this case is, Does the plaintiff, having the burden of proof upon it, show that Ellen Coughlin, a pauper, has a legal settlement in the defendant town? The only evidence offered in support of the proposition is the fact that, in March 1876, she was married to Jeremiah Coughlin, who had a legal settlement therein. If that marriage was a valid marriage, the pauper's settlement followed the settlement of her husband, and the defendant town is, upon the facts agreed, liable for her support; and the question for us to decide is, Does the plaintiff show that marriage to have been valid ? In June 1867, Ellen Coughlin, then Ellen Roach, " contracted a valid marriage with William Lovell of West Rutland, in the State of Vermont, of which place she was also a resident, at said West Rutland," and they lived together in said West Rutland until June 1870, when said Lovell left his home and family. He has not since been heard from by said Ellen. In July of the same year, Ellen removed from West Rutland to

Canton in this Commonwealth. On March 19, 1876, Ellen married Coughlin, and they lived as man and wife in the plaintiff town. Do these facts show that, at the time of her marriage with Coughlin, her former husband was dead? This is a pure question of fact; and, in the absence of any direct evidence, is to be determined by the presumption which the law authorizes. If a man leaves his home and goes into parts unknown, and remains unheard from for the space of seven years, the law authorizes, to those that remain, the presumption of fact that he is dead; but it does not authorize him to presume therefore that any one of those remaining in the place which he left has died.

This is well illustrated in the case of *Commonwealth* v. *Thompson*, which was before this court twice, 6 Allen, 591, and 11 Allen, 23. In 6 Allen, 591, it appeared that, under the instructions of the judge of the Superior Court, the defendant had been convicted of adultery by reason of his cohabitation, under the forms of marriage, with one whom, in good faith, he supposed to be a widow, whose husband had absented himself from her and had been in parts unknown, and had not been heard from for more than seven years. The court held such conviction erroneous, and ordered a new trial. Upon the second trial of the case, it appeared, not that the husband had deserted the wife for the space of seven years, but that the husband " was of dissipated habits and neglected to provide for her, in consequence of which she left him, and lived in various places until her marriage with the defendant; that before her second marriage she read in a newspaper of the killing of William B. Carlton " (her husband's name) " in a drunken row in Billerica in this Commonwealth, and believed it to be her husband; that she had no knowledge that he was alive, and had not seen or heard from him for more than eleven years." The Chief Justice of the Superior Court instructed the jury, " that when a wife departs from her husband and remains absent and distant from him, as in the present case, without knowledge or inquiry respecting him, no presumption of his death arises from the fact that she had not heard from him for seven years; " and this ruling was approved by this court. These decisions are both based upon well-recognized principles.

To apply them to the case at bar. The facts agreed show only an absence of a month. The husband left his residence in June 1870; the wife left the next month, and removed from the State in which she and her husband had resided. It does not appear that she has since made any inquiry respecting him; nor that he did not immediately return to West Rutland, and that he has not ever since that time resided there. The only absence from his home which the agreed facts disclose is an absence of one month. The fact that the husband has not been heard from seems to be studiously confined in the agreed statement to the wife herself.

It is said, however, in argument, that there is a presumption of innocence, which of itself is sufficient to overcome the presumption of continuance of life; and that therefore the fact that the pauper married again is to be considered as some evidence that she might lawfully do so. The presumption of innocence is not based upon facts, but is independent of all evidence. The presumption of continued life rests upon facts proved; and those established facts, while they raise the presumption of continued life, rebut the presumption of innocence.

The case of *Kelly* v. *Drew*, 12 Allen, 107, is relied upon as holding a different doctrine. But the decision in that case was under very different circumstances, and the question presented to the court an entirely different one. In that case, the plaintiff proposed to call as a witness her daughter, who had been living fifteen years or more with the defendant as his wife. If she were his wife, she was not a competent witness. When offered as a witness, her competency was objected to upon the ground that she was the wife of the defendant. Competency of a witness is always a question to be determined, in the first instance, by the presiding judge. If the decision of the question of competency requires that any fact is to be established, such fact is to be found by the judge; and his finding is conclusive upon such fact, if there is proper evidence to be considered. Two questions were there presented: first, whether it was competent to prove a marriage to be void upon the testimony of one of the parties; second, whether the evidence which was tendered to the presiding justice was such as required him to find that the marriage was void. On examining the facts in that case, we

find that the witness was married to the defendant about sixteen years before the time of the trial, and had kept house and lived with him twelve years, or until about four years before the trial, when they separated and lived apart from each other. The only other facts which it was proposed to prove by the witness were, that twenty-one years before the trial she had been lawfully married to one Hall; that she had lived with said Hall as his wife for a few months; and that, at the time of her marriage to said Drew, she had not heard of the death of said Hall. These being all the facts, the question was whether the presiding judge was bound as matter of law to decide that the second marriage was void.

It is to be remembered that at most the presumption of the continuance of life is merely a presumption of fact, which is subject to be controlled by facts and circumstances and other legitimate evidence. *In re Phené's trusts*, L. R. 5 Ch. 139. *Davie v. Briggs*, 97 U. S. 628. It is a presumption by no means of equal strength at all times and under all circumstances. If the last that is known of a person was that he was a soldier, and was about entering into a battle, and had been seen by none of his comrades after the battle, the presumption of continuance of life would be very slight, and very slight evidence would be sufficient to control it. And so if the person were a sailor, and entered upon a voyage of danger, and the vessel in which he sailed was not heard from within a reasonable time, the presumption of his continuance in life would be slight; indeed, by the Province law, if a husband embarked upon a voyage which could ordinarily be performed in three months, and the vessel was not heard from within three years, the presumption of continuance in life was not only rebutted, but a presumption of death was raised. Prov. St. 1698 (10 Wm. III.) c. 19; 1 Prov. Laws (State ed.) 353.

The evidence, therefore, that a person was living at a particular time is but one of the facts to be considered in the determination of the question whether he is living at any future given time; and it is quite clear that, under the circumstances of the case of *Kelly v. Drew*, and considering the situation and relation of the parties, the circumstances surrounding them, the vicinity in which the witness had lived and been recognized as the wife

of the defendant, the presiding judge was not bound to find that at the time of the second marriage the witness was the lawful wife of Hall, and therefore not the lawful wife of Drew. And the court in that case say, what upon familiar principles had universally been deemed to be the law up to that time, " The judge presiding at the trial could not admit her as a witness against the defendant, without being satisfied that she was not his lawful wife."

Inasmuch as the court was called upon to revise the finding of fact, by a judge whose duty it was to determine the fact, upon the ground that he was not authorized in law thus to find, the succeeding sentence would more clearly have expressed the result to which the court had arrived, if it had said that "no sufficient evidence was offered" which required the judge to find " that at the time of marrying him she had a former husband." Although the words not included within the quotation marks were not used by the judge in giving the opinion, the context sufficiently indicates that they were understood.

In the case at bar, there is no evidence developed by the agreed statement of facts, upon which it would be competent to find that the pauper was lawfully married to Coughlin. The liability of the defendant town is wholly a statute liability; and, to entitle the plaintiff town to fix the liability upon the defendant, it is incumbent upon it to show affirmatively every fact necessary to establish that liability. Having failed thus affirmatively to fix such liability, there must be

*Judgment for the defendant.*